FILED

# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VIRGINIA

2018 SEP -6 P 4: 35

SUSAN HESTER-CARRILLO
Pro Se                                    *
15000 Potomac Town Pl
Woodbridge, VA 22191                      *
*(Full name and address of the plaintiff)*
**Plaintiff**

vs.                          * Civil No.: 1:18 cv 1132
                             *(Leave blank. To be filled in by Court.)  CMH/TCB

STATE OF MARYLAND,

Serve
Attorney General Brian Frosh
200 Saint Paul Street
Baltimore, Maryland
21202
(410) 576-6300
**Defendant(s)**

# **COMPLAINT**

1. Jurisdiction in this case is based on:

    __X___Diversity (none of the defendants are residents of the state where plaintiff is a resident)

    __X___Federal question (suit is based upon a federal statute or provision of the United States Constitution)

    __X__ Other (explain) The State of Maryland violated the Americans with Disabilities Act of 1990 (ADA), Title II. Specifically, the Defendants caused personal injury to the Plaintiff, when they violated the ADA, Title II, Sections 12101- 12203. The Defendant's violations of the ADA Title II, Sections 12101- 12203 include: (1) denial of the Plaintiff's right to due process guaranteed under the US Constitution; (2) discrimination against the Plaintiff based on medical disability; (3) criminal harassment of the Plaintiff due to prejudicial perceptions of the Plaintiff's medical disability; (4) acts of retaliation against the Plaintiff; (5) acts of slander/character defamation; and (6) denial of the Plaintiff's constitutionally protected parental right to raise her minor children. Under the ADA, Title II, section 12202, the ADA specifically states "**A State shall not be immune** under the Eleventh amendment of the Constitution of the United States from an action in Federal or State Court of competent jurisdiction for a violation of this [aforementioned] chapter". Title II of the ADA seeks to prohibit irrational

disability discrimination. For this reason, the US District Court has subject matter jurisdiction in this case.

Numerous US Supreme Court cases have affirmed the Plaintiff's right to sue the Defendants for ADA, Title II, violations. According to the United States Supreme Court case in 2004, Tennessee v. Lane, 541 US 509 (2004), the Supreme Court declared, "Title II [of the ADA] seeks... to prohibit irrational disability discrimination... it also seeks to enforce a variety of other basic constitutional guarantees, including some, like the right of access to the courts here at issue, infringements of which are subject to heightened judicial scrutiny". Since April 7, 2017, the Defendants consistently denied the Plaintiff a meaningful opportunity to be heard in Maryland courts. Furthermore, in the US Supreme Court case, United States v. Georgia et al. (2005), the court affirmed the Plaintiff's right to sue for disability discrimination. In United States v. Georgia et al. (2005), "[Petitioner] Goodman...sued respondent state defendants and others, challenging the conditions of his confinement in a Georgia prison under, *inter alia*, 42 U. S. C. §1983 and Title II of the Americans with Disability Act of 1990. As relevant here, the Federal District Court...granted the Title II money damages...The United States, petitioner in No. 04–1203, intervened on appeal. The Eleventh Circuit affirmed the District Court's judgment as to the Title II claims...[and] that Goodman had alleged facts sufficient to support a limited number of Eighth Amendment claims against state agents...Insofar as Title II, [this precedent] creates a private cause of action for damages against States for conduct that actually violates the Fourteenth Amendment...Title II validly abrogates state sovereign immunity". In addition, the US Supreme Court case,

Younger v. Harris, 401 U.S. 37, 56 (1971), asserts that the US District Court must "intervene by way of either injunction or declaration, if there has been bad faith and harassment- official lawlessness- in a statute's enforcement". The facts of this case provide ample evidence of the Plaintiff's claims of due process violations, discrimination, harassment, and retaliation by the State of Maryland due to disability discrimination.

2      The facts of this case are:

The State of Maryland has violated the ADA, Title II, congressional mandates and the US Supreme Court mandates, which seek to prohibit irrational disability discrimination and to enforce the Fourteenth Amendment due process and equal protection rights of disabled persons. The Plaintiff files this personal injury complaint due to these constitutional violations by the State of Maryland since April 7, 2017. The Plaintiff is filing in the US District Court for Alexandria, Virginia due to diversity jurisdiction. The Plaintiff is a resident of Virginia and the Plaintiff has suffered personal injury in Virginia in the form of lost employment opportunities, extreme impoverishment, and homelessness. On June 7, 2018, the Maryland State's Attorney, Sheila Baghari, maliciously prosecuted the Plaintiff by committing acts of discrimination against the Plaintiff for medical disability. In a malicious act of prosecution on June 7, 2018, the State's Attorney, Sheila Baghari, stated during her closing arguments to Judge Williams of the District Court in Silver Spring, Maryland that, the Plaintiff had "schizophrenia", **even though the Plaintiff does NOT have schizophrenia**. The State's Attorney had access to the Plaintiff's medical information since January, 2018. In February, 2018, the Plaintiff met with a Maryland government employee and licensed mental-health expert of

the District Court, Maxine Curtis, who coordinated with the Plaintiff's Attorney Jeff Zahler, a review of the Plaintiff's mental health records. Both Maxine Curtis, a government employee of the State of Maryland, and the Plaintiff's Attorney, Jeff Zahler, verified the Plaintiff's diagnosis with the Maryland State's Attorney. In addition, the Maryland government employee and the Plaintiff's Attorney verified the Plaintiff's stable mental-health condition.

On May 15, 2018, the Maryland State Attorney's Office attended a court hearing that was initiated by the Maryland Pre-Trial Services Unit (PTSU). At the hearing, Mary Lalos of the PTSU confirmed the Plaintiff's diagnosis with the State Attorney's Office. From November, 2017 through June 6, 2018, several licensed mental-health experts provided documentation to Mary Lalos of the Maryland Pre-Trial Services Unit, which verified the Plaintiff's good mental-health condition. The Maryland State's Attorney never provided evidence at trial by an expert in mental health regarding the State Attorney's discriminatory remarks. Also, the Plaintiff's mental-health diagnosis was confirmed in a court-ordered evaluation of the Plaintiff's mental health in 2012. (Please see attached Evidentiary Exhibit A from the Maryland Circuit Court from 2012, which confirm the diagnosis of the Plaintiff.) Several psychiatrists and psychologists, who reviewed the Plaintiff's mental health history since 2009, performed the 2012 mental-health evaluation. Two mental-health experts, Dr. Putnam and Dr. Madsen, were designated "expert witnesses" by the Maryland Circuit Court. The two experts performed a comprehensive mental-health evaluation of the Plaintiff including a review of all of the Plaintiff's medical records from several prior psychiatrists. **The opposing party in the criminal trial on June 7, 2018 entered no evidence by any expert in mental health regarding the**

**State Attorney's false claims that the Plaintiff had "schizophrenia".** In a fit of rage, State's Attorney, Sheila Baghari, made discriminatory remarks against the Plaintiff with the intention of discriminating against the Plaintiff based on medical disability. State's Attorney, Sheila Baghari, used her layperson's opinion to proffer a conviction that resulted in Judge Williams' verdict.

As a result of the State Attorney's disability discrimination, the judge rendered three guilty verdicts for the same misdemeanor charge: The Plaintiff made "alleged phone calls, which violated an alleged protective order". Due to the State Attorney's discriminatory remarks in front of the judge, the judge rendered a sentence of three maximum jail sentences of 90 days (suspended), three maximum fines (suspended), and 2-years of probation. The sentences were rendered as consecutive sentences and not concurrent. The State Attorney's disability discrimination influenced Judge Williams, since the three maximum sentences were rendered for three convictions of the same crime. None of the three misdemeanor charges were served to the Plaintiff until the day of trial, June 7, 2018. In July 2018, the Plaintiff appealed the guilty verdict. The Plaintiff's case is currently under appeal due to constitutional violations by the State's Attorney including denial of the Plaintiff's right to a "speedy trial" and the Plaintiff's constitutional right "not to be charged with the same crime twice". The opposing party in the case submitted into evidence three "alleged" phone calls that all contained the same content and were all relevant to the same misdemeanor charge. The "alleged" phone calls were all voice mails notifying the Plaintiff's ex-spouse that the Plaintiff intended to report her ex-spouse, Oscar Carrillo, Senior, for attempted murder or abduction of the Plaintiff's sons. Although the criminal case in Montgomery County, Maryland is under appeal, the Plaintiff is suffering personal injury due to loss of employment opportunities, extreme impoverishment, and homelessness. In

addition, the Plaintiff is not able to pursue a doctoral program in management sciences due to the pending "du novo" jury trial on November 19, 2018 in the Montgomery County, Maryland Circuit Court.

The Plaintiff has never been diagnosed with "schizophrenia". The Plaintiff's Post-Traumatic Stress Disorder is in remission. In Spring 2018, the Plaintiff was a successful graduate student with a 4.0 GPA. During the Spring 2018 semester, the Plaintiff was a working professional. Since the aforementioned acts of disability discrimination by the State of Maryland, the Plaintiff has been unable to find employment or return to graduate school to pursue a doctoral program. In addition, Parole Officer Langley entered the June 7, 2018 guilty verdict into a national database that police officers use to check a person's criminal background. Even though the Plaintiff's case is under appeal, Officer Langley, a Maryland government employee, refused to update the Plaintiff's case file to reflect the appeal status of the case.

In addition, the Plaintiff was harmed due to the PTSU's restrictions on the Plaintiff's contact with her minor child from November 4, 2017 through June 7, 2018. PTSU interfered with the Plaintiff's parental rights without any cause or any due process. According to the US Supreme Court, parental rights cannot be terminated without due process or equal protection guaranteed by the Fourteenth Amendment of the U.S. Constitution. In the US Supreme Court case, Troxel v. Granville, 530 U.S. 57 (2000), the United States Supreme Court issued a landmark opinion on parental liberty. The U.S. Supreme Court ruled that a Washington statute "unconstitutionally interferes with the fundamental right of parents to rear their children." The Court went on to affirm its treatment of parental rights in subsequent cases. In US Supreme Court case, Santosky v. Kramer, 455 U.S. 745, 753, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982), The US Supreme Court

recognized "the fundamental liberty interest of natural parents in the care, custody, and management of their child". This precedent was affirmed in US Supreme Court case, Wisconsin v. Yoder, 406 U.S. 205, 232, 32 L. Ed. 2d 15, 92 S. Ct. 1526 (1972) "The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition"; Again the court in US Supreme Court case, Quilloin v. Walcott, 434 U.S. 246, 255, 54 L. Ed. 2d 511, 98 S. Ct. 549 (1978), "recognized on numerous occasions that the relationship between parent and child is constitutionally protected"; Also, US Supreme Court case, Parham v. J. R., 442 U.S. 584, 602, 61 L. Ed. 2d 101, 99 S. Ct. 2493 (1979), affirmed, "the family as a unit with broad parental authority over minor children...[US Supreme court] cases have consistently followed that course"; In light of this extensive precedent, it cannot be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children. US Supreme Court cases clearly uphold parental rights.

From November 4, 2017 through present, there has not been a single piece of evidence or witness testimony submitted by the opposing party to justify the denial of the Plaintiff's constitutionally protected right to raise her minor children. In fact, the opposing party has never submitted any evidence or cause for termination of the Plaintiff's parental rights. Furthermore, the State's Attorney and Maryland Police Officer Beck obstructed justice by not investigating the Plaintiff's reports of domestic violence. As of today, the State of Maryland has still not investigated the Plaintiff's reports of domestic violence and child abuse by her ex-spouse. The

Plaintiff's children are still not protected from abuse and Maryland officials continue to obstruct justice by not investigating "missing persons" reports" and "domestic violence reports" by the Plaintiff. The Plaintiff's ex-spouse holds both of the Plaintiff's sons against their will on a regular basis and "false imprisonment" is against the law in Maryland. The State's Attorney clearly interfered with a criminal investigation based on disability discrimination and violated ADA, Title II, Section 12203, Interference, coercion and intimidation.

On November 4, 2017, PTSU's disability discrimination against the Plaintiff denied the Plaintiff access to the public court system by holding the Plaintiff in jail for 10 days without bond for a "mental-health evaluation". On November 6, 2017, PTSU denied the Plaintiff access to the public court system based on irrational disability discrimination. In the Boyd, Maryland prison, the designated expert from the Maryland prison system, Dr. Smith, confirmed the Plaintiff's diagnosis of Post-Traumatic Stress Disorder. Dr. Smith also confirmed that the Plaintiff was mentally competent. On November 4, 2017, Maryland Police Officer Beck's body camera recorded her statement that Officer Beck was looking for "cause" for an involuntary psychiatric hospitalization of the Plaintiff, **but she had no evidence**. Furthermore, Police Officer Beck admitted that there was only a "returned mail" docket entry for an "alleged" FINAL protective order from April 7, 2017. On November 4, 2017, the Plaintiff had no idea that there was a protective order issued in April 2017. The alleged 2017 protective order was issued without evidence, without witness testimony and without a hearing for the Plaintiff. According to federal statutes, a FINAL protective order cannot be enforced without proof of an "affidavit of service". As of November 4, 2017, the Plaintiff had never had a hearing or had never been served with a protective order. Clearly, the Plaintiff's false imprisonment for 10 days was an act

of disability discrimination and constituted criminal harassment.

## PERSONAL INJURY CLAIM

For reasons of irrational disability discrimination against the Plaintiff, the Plaintiff requests the US District Court intervene and order: (1) monetary and punitive damages to be paid by the State of Maryland to the Plaintiff and (2) injunctive relief. At trial, the Plaintiff will prove that the State of Maryland is guilty of disability discrimination, criminal harassment, and slander. The US District Court's order to require the State of Maryland to compensate the Plaintiff for damages is a necessary intervention, because the State of Maryland violated the ADA, Title II, 42 USC 12101-12203, and the Civil Rights Act of 1964, 42 USC 1983, by persistent acts of disability discrimination, harassment, prejudice, and slander against the Plaintiff. Furthermore, the Plaintiff seeks injunctive relief and requests the US District Court order the current case number, 5D00378047, pending appeal in Montgomery County, Maryland Circuit Court to be removed to the US District Court for Alexandria, Virginia for trial. The US Supreme Court case, Moore et al v. SIMS et UX, 442 U.S. 415 (1979), declares

> **"The doctrine which counsels federal court intervention in a pending state… proceeding 'allows intervention in those cases where a federal court properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it'".**

In addition, The Plaintiff is seeking monetary and punitive damages from the State of Maryland. The Defendants have shown persistent failure to abide by the ADA and repeated irrational disability discrimination against the Plaintiff. Due to chronic abuse by the Plaintiff's ex-spouse, the Plaintiff suffered from Post-Traumatic Stress Disorder; however, the Plaintiff receives appropriate medical treatment and remains in stable condition. On June 7, 2018, the Maryland State's Attorney maliciously discriminated against the Plaintiff without evidence. The State Attorney used her layperson "observations" as the only grounds for conviction in the closing argument by the State. Since 2012, the Plaintiff has submitted evidence to the Circuit Court that impeached the opposing party - in a civil case - as a witness. The Plaintiff has proof of the opposing party's acts of perjury, tampering with court evidence, and obstruction of justice. Furthermore, the Plaintiff was denied the opportunity to enter evidence at trial to impeach the State Attorney's false statements. The State's Attorney so influenced Judge Williams with her discriminatory remarks that Judge Williams claimed that he believed the Plaintiff was not "credible", even though no impeachment evidence was entered by the State. As well, the State's Attorney violated Maryland Rule 5-605 by making discriminatory remarks to a judge. According to Maryland Rule 5-605: Competency of judge as a witness, "The judge presiding at trial may not testify in that trial as a witness. No objection need be made in order to preserve the point". The State Attorney's discriminatory remarks at trial on June 7, 2018 clearly prejudiced Judge Williams. The State Attorney's refusal to comply with Maryland criminal procedures and the US Constitution at the June 7, 2018 trial are the grounds for this personal injury claim. In addition to acts of irrational disability discrimination, the Plaintiff claims personal injury for the

State of Maryland's acts of slander, use of excessive force, false imprisonment, criminal harassment and disability discrimination.

The Plaintiff's pain and suffering includes 10 days in jail, loss of employment, loss of future career opportunities, loss of reputation and homelessness. The Plaintiff has experienced emotional pain and suffering due to the loss of her career including future opportunities as a doctoral fellow. Furthermore, the Plaintiff has suffered a loss of personal income due to irrational disability discrimination by the Defendants. In August 2018, the Plaintiff was offered employment by Carlos Campos of JC Penney Corporation in Springfield, Virginia; however, when the JC Penney corporate hiring officials conducted a criminal background check, the Plaintiff was denied employment by JC Penney based only on the Plaintiff's erroneous criminal record, which is maintained by the Maryland Department of Public Safety and Correctional Services. The Plaintiff requested in writing that the Maryland Department of Public Safety and Correctional Services update and correct the Plaintiff's criminal record, but the request was not granted. In addition, the Plaintiff was forced to withdraw from a graduate program in management sciences due to pending court hearings. Furthermore, the Plaintiff was forced into homelessness on November 14, 2017 by the Maryland Pre-Trial Services Unit and is currently living in a homeless shelter in Virginia.

In addition to the loss of employment opportunities, the Plaintiff has not been able to find long-term housing due to criminal background reports. Currently, the Plaintiff is living in a homeless shelter in Virginia. Also, Maryland's pre-trial requirements from November 4, 2017 through June 7, 2018 were all discriminatory in nature including unnecessary ankle monitors, pre-trial restrictions regarding the Plaintiff's contact with her minor children, and weekly PTSU

office visits that cost $50.00 per visit. PTSU office visits consisted of criminal harassment regarding access to my private medical information. Mary Lalos, a Maryland employee for the Maryland Pre-Trial Supervision Unit (PTSU), threatened to incarcerate me several times for not authorizing the release of all of my personal information, which was unnecessary for monitoring. The Plaintiff met all of the requirements ordered by the courts with regard to compliance with mental-health treatment and verification, but Ms. Lalos continually threatened the Plaintiff with incarceration for not authorizing the release of personal information. Ms. Lalos of PTSU repeatedly violated the Plaintiff's rights to privacy protected under the federal Health Insurance Portability and Accountability Act of 1996 (HIPPA)". The HIPPA federal statute protects the Plaintiff's constitutional right to privacy and protection of medical information.

Wherefore, Maryland government officials have persistently committed irrational disability discrimination against the Plaintiff. In addition, the State of Maryland's disability discrimination has caused the Plaintiff extreme personal injury. For these stated reasons, the Plaintiff has cause for a personal injury claim seeking monetary and punitive damages from the State of Maryland for $5 million dollars. The State of Maryland failed to comply with federal statutes based on irrational disability discrimination. Under the Governor of Maryland's official capacity, the State of Maryland condoned all of the acts of irrational disability discrimination committed by Maryland government employees named in this case. Furthermore, the Plaintiff requests compensation for all of the litigation fees and expenses incurred by the Plaintiff in defense of the Plaintiff's civil rights and disability rights guaranteed by the United States Constitution. Finally, the Plaintiff requests that the US District Courts "permit the [Virginia] Attorney General to intervene in the civil action if the Attorney General or his or her designee certifies that the case is

of general public importance" (See Statute 28 CFR Part 36, Subpart E-Enforcement, 36.501, Private Suits (a)).

3    The relief I want the court to order is:

☒ Monetary and Punitive Damages: The Plaintiff seeks compensatory damages for pain and suffering, litigation fees, related expenses, loss of personal income, loss of housing and any other relief the Court deems is just and proper. Per the above-listed personal injury claim, damages in the amount of $5 million dollars are sought by the Plaintiff. Damages are necessary due to violations of the federal laws 42 USC 12101- 12203 and 42 USC 1983. Maryland and the listed Defendants in this case violated these aforementioned federal laws and the Defendants' irrational disability discrimination against the Plaintiff caused irreparable harm to both the Plaintiff and the Plaintiff's minor children. The Plaintiff demands a jury trial for the personal injury claim in this case.

☒     An injunction ordering: An intervention by the US District Court for Virginia to remove the November 19, 2018 Maryland Circuit Court trial in case number 5D00378047 to the US District Court of Virginia. The following US Supreme Court case allows the US District Court to enforce the US Judicial Code regarding disqualification, Berger v. United States, 255 US 22, "the affidavit of prejudice was sufficient to invoke the operation of the US Jud. Code 21..." The Plaintiff's statement of prejudice is included in this Complaint and the affidavit is signed by the Plaintiff at the end of this document. The US Supreme Court case Caperton v. A.T. Massey Coal Co., 129, S. Ct. 2252 (2009) affirms this federal precedent, "principles of due process may require a judge's recusal...where there is serious risk of bias". Since the disability discrimination

against the Plaintiff was pervasive throughout the Maryland court system, the US District Court's intervention is justified.

☒ Other (explain) Removal of the child custody case, FL-78243, from the Montgomery County Circuit Court to the US District Court of Virginia. The Plaintiff's personal injury claim, which seeks monetary damages against the State of Maryland for personal injury, justifies the removal of Family law case FL-78243 from the Rockville, Maryland Circuit Court. According to the Maryland Constitution, Article IV, 6, Recusal, Removal, or Restrictions on a Judge, Section 25, requires "No Maryland judge may sit in any case in which the judge is interested... The word interested refers to pecuniary interest in the litigation or its outcome". Since the judge assigned to the November 19, 2018 criminal trial previously adjudicated in the Plaintiff's child custody case, it is necessary for the case, FL-78243, to be removed to the US District Court for Virginia, where the Plaintiff resides. The Maryland Appellate Court affirmed in Magruder v. Swann, 25 Md. 173 (1986), "A judge may not sit where his right to office is involved". Given the persistent nature of the discrimination against the Plaintiff, Maryland judges are no longer able to adjudicate this matter without prejudice.

☒ An injunction ordering: An Order to stay the enforcement of the May 15, 2014 Montgomery County Circuit Court Order in case FL-78243, which effectively terminated the Plaintiff's parental rights without due process and equal protection. The US District Court for Virginia must intervene to stop the Montgomery County Circuit Court from denying the Plaintiff her constitutionally protected right to parent her children. An injunction to STAY the most recent Circuit Court Order in case FL-78243 would

allow the Plaintiff access to the court system to reinstate the Plaintiff's parental rights.

PLAINTIFF'S AFFIDAVIT:

I SOLEMNLY AFFIRM UNDER PENALTIES OF PERJURY THAT THE CONTENTS OF THIS DOCUMENT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

_September 6, 2018_
(Date)

_Susan H. Carrillo_
(Pro Se)                (Signature)

Susan Hester-Carrillo

15000 Potomac Town Pl.

Woodbridge, VA 22191

(202) 406-0971

(Printed name, address and phone number of Plaintiff)

**Privacy Rules and Judicial Conference Privacy Policy**

Under the E-Government Act and Judicial Conference policy, any paper filed with the court should not contain an individual's social security number, full birth date, or home address; the full name of person known to be a minor; or a complete financial account number. These rules address the privacy concerns resulting from public access to electronic case.

Please see attached Evidentiary Exhibits A.1-A.19

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRIGINIA
_____ DIVISION

__Susan Hester Carrillo__
Plaintiff(s), *Pro Se*

v.

Civil Action Number: _____

__State of Maryland, et al.__
Defendant(s).

## LOCAL RULE 83.1(M) CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared, or assisted in the preparation of __Complaint__.
(Title of Document)

__Susan Hester Carrillo__
Name of *Pro Se* Party (Print or Type)

__/s/ Susan Hester Carrillo__
Signature of *Pro Se* Party

Executed on: __9/6/2018__ (Date)

OR

The following attorney(s) prepared or assisted me in preparation of _____.
(Title of Document)

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)